## Bob Holland v. The State.

### No. 4170. Decided June 9, 1909.

**1.—Murder—Charge of Court—Precedent.**

Where upon trial for murder the court submitted a charge to the jury approved by the Appellate Court, there was no error.

**2.—Same—Continuance—Immaterial Testimony.**

Where upon trial for murder the evidence showed that the defendant had an altercation with his sister and went away and secured a gun, returned and shot into the house and killed her, there was no error in overruling an application for continuance for the want of testimony that defendant had agreed to go somewhere else on the night in question.

**3.—Same—Evidence—Threats.**

Where upon trial for murder the evidence showed that the witness testified as to a row between the defendant and the deceased, and that he afterwards, just before the homicide, during the night-time, heard certain threats which in the nature of things must have been made by the defendant, and which could not have had any relation to anyone else except the deceased, the same were admissible in evidence.

**4.—Same—Evidence—Voice—Opinion of Witness.**

Upon trial for murder there was no error in admitting in evidence the opinion of a witness as to whether a voice he heard was the same voice he heard a few moments before.

**5.—Same—Evidence—Hearsay—Declaration of Third Parties.**

Upon trial for murder there was no error in admitting testimony of a third party that while defendant and deceased were quarreling in her presence she called upon another party to come and take the defendant away and let deceased alone.

**6.—Same—Bill of Exceptions—Practice on Appeal.**

Where upon appeal from a conviction of murder the appellant's bill of exceptions as to the rejection of testimony is refuted by the record there was no error to be considered.

Appeal from the District Court of Upshur. Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of murder in the first degree; penalty, imprisonment in the penitentiary for life.

The opinion states the case.

*Warren & Griggs,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at life imprisonment in the penitentiary.

This is the second appeal of this case. See former appeal in 55 Texas Crim. Rep., 27; 115 S. W. Rep., 48. We expressly, in said former opinion, approved the charge of the court. The charge is substantially the same now as it was in former appeal.

Bill of exceptions No. 1 complains the court erred in overruling the application for continuance for the want of the testimony of Zeke Freeman. The application shows appellant lived about two and a half miles northeast of Gilmer, on the Gilmer and Coffeeville road, and on the Jay Childress farm, and that it will be contended by the State, as an evidence of malice, that after the defendant and deceased had had a wordy altercation he left, going to his home, and procured his gun, and came back to where the deceased was living, at which place the homicide occurred. As explanation of why he happened to come back from his home on that occasion he expected to prove by said Zeke Freeman that, about a week before the homicide, he and the said Zeke Freeman attended meeting at the colored church across Cypress, near Del Rose, and while there were informed that on the following Saturday night there would be a festival. That he and the said Zeke Freeman agreed to go back and attend the festival on that night, which was the night of the homicide. That on Saturday evening before the homicide defendant and said Freeman talked over the matter of going to the festival, and after the day's work was over it was agreed between them that the defendant should go home, and then return to Zeke Freeman's, and they would go together on over to the festival. This testimony is utterly immaterial to any issue raised by the evidence in this case. The facts show that appellant had a row with his sister and went off and secured a gun, and came back and shot into the house and killed her. Now, the mere fact that he had agreed to go somewhere else on the night in question would not be pertinent or material testimony. The court did not err in overruling the application for continuance.

Bill of exceptions No. 2 shows that the State witness W. A. Hart testified that he lived about two miles northeast from the town of Gilmer. That on the night of the homicide, and about dark, he was returning to his home from the town of Gilmer, traveling over the Texas Southern Railway track. That when he got opposite the house

of Ida Marable he heard the voice of some party, a man and woman, who appeared to be in a quarrel; that he stopped and listened, and recognized the voice of Ida Marable, now deceased, and whom he had known for many years. That he took it to be merely a negro quarrel and went on home. When he had gotten some three or four hundred yards from the said Ida Marable's he heard somebody coming along the railroad behind him who was mumbling or talking to himself; that said party was walking rapidly, as he overtook witness before the witness got to his home; that it was dark, and he did not recognize or know who the party was, and could not tell whether he was a white man or a negro, but, basing his opinion upon the sound of the voice, he took it to be a drunken negro. That just before witness got to his house this party overtook him, but turned off the railroad and went into the public Gilmer and Coffeeville road, which goes by Jay Childress' farm. That as said party passed he said, according to the best witness could understand him, "I am going home and get my gun, and come back and settle it, and have my rights," or something of that kind. Witness further stated that he went home, ate his supper, and in a short while somebody came back by witness' house, coming from the direction of the Jay Childress farm, going towards town along the public road. The party was talking to himself, and witness heard this statement: "I have got my gun now, and am going back and have my rights," or something of that kind. Witness took it to be the same voice he heard say, "I am going home and get my gun, and come back and have my rights." On cross-examination this witness said he never knew the defendant until after the killing; had never seen him that he knew of. That he never heard of the killing until the next day. The bill is allowed with this qualification: "That the witness' testimony, judged from his language, as well as his manner, clearly indicated that it was his best judgment that the party he heard quarreling at Ida Marable's was the same who passed him, going in the direction of defendant's home, and afterwards returning in direction of where the homicide occurred." General threats, as stated in the former opinion in passing upon the question then raised, were held by this court not to be admissible, but in view of the fact that the witness substantially testifies to a row between the defendant and the deceased, then clearly the declarations of the defendant, although not positively sworn to, but clearly identified by his voice, are admissible to show animus, motive and intent. See Mathis v. State, 34 Texas Crim. Rep., 39. The threats here introduced could not, in the nature of things, have had any relation to anyone else than deceased. For the facts of this case, see former opinion.

Bill of exceptions No. 3 complains of the following: "While the witness W. A. Hart (whose testimony is complained of in bill No. 2) was testifying, and after the witness had testified as to what the party who was coming along the road behind him, mumbling something, and that as said party passed and said something which, in the opinion of

the witness, was to the effect, etc. Which was objected to by the defendant because it was the opinion of the witness." The court overruled the objection, and stated to the witness W. A. Hart as follows: "Of course, Mr. Hart, you are giving your recollection of what he said." This remark of the court was made in the presence and hearing of the jury, and was objected to at the time by the defendant. The bill is approved with the explanation "that Mr. W. A. Hart, the witness, was a lawyer, and well known by all the jury to be a lawyer." Certainly a witness can give his opinion as to whether a voice he hears is the same voice he heard a few moments before. We see no error in the ruling of the court.

Bill of exceptions No. 4 shows that the defense witness, Johnnie Christian, was asked by the State's counsel the following question: "State whether Lucretia Marable called you as you was passing her house, and, if so, what she said?" To which question appellant objected for the reason that any statement made by Lucretia Marable could not be binding upon the defendant, and the fact that she called him, if she did, was the act of Lucretia Marable, and not binding on the defendant, and her acts and statements are immaterial to any issue in the case and prejudicial to the defendant. The objection being overruled, the witness answered: "As I was passing by Ida Marable's house Lucretia Marable called me, and told me to come over there. She said Baker was over there drunk, and she said carry him away from there and make him let Ida alone." The bill is allowed with this explanation: "That when John Christian was called by Lucretia Marable, while defendant and Ida Marable were quarreling in Lucretia's presence, and the language was used in the presence and hearing of defendant, and serves to explain the conduct and language of the defendant thereafter." Clearly, in the light of the statement of the court, the evidence was admissible.

Bill of exceptions No. 6 shows the defense witness, Dan Fowler, was asked by appellant whether or not the gun owned by defendant, when defendant lived north of Cypress near said witness, had acquired a general reputation, as to whether it was "tricky," and, if so, to state whether or not he was acquainted with such reputation. The State objected, and the court sustained same. The court appends this explanation: "That said witness fully testified that said gun had acquired a general reputation, and that he was acquainted with such reputation, and it had the reputation of being 'tricky,' in that the hammer would fall and it would be discharged without any action on the part of the holder of the gun." In the light of this explanation, which refutes the complaint in the bill, there was no error in the ruling of the court.

We have carefully reviewed all of appellant's exceptions, and finding no error in this record, the judgment is affirmed.

*Affirmed.*